

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00036-CR

RICHARD CARDONA                                                          APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

### FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1343625D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Richard Cardona appeals from his conviction for aggravated assault with a deadly weapon—a firearm—and 40-year sentence. We reverse the trial court's judgment and remand for further proceedings. *See* Tex. R. App. P. 43.2(d), 43.3.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

In the early morning hours of September 1, 2013, Cardona was attending a relative's birthday party at a local bar. Cardona was wearing a white baseball cap and a white shirt with blue, horizontal stripes. When the bar closed at 2:00 a.m., Cardona and several other people began leaving the bar from the front entrance. After getting into a physical and verbal argument with several unidentified men, Cardona said he was going to go get "something,"[2] left the area to get his car from the bar's back parking lot, and drove to front of the bar. He stopped the car in the middle of the street, got out with a gun, began shouting expletives and epithets to a group of people, and shot four times into the group. As he was running back to his car, he shot two more times over the hood of his car into the group. Cardona's wife, who was involved in the fight, confirmed that the man in the video shooting a gun was Cardona. Ann Huffhines, who was standing near the group of people and next to Cardona's relative, was shot, resulting in "holes" in her right shoulder and both sides of her jaw and in a bullet wound to her neck.[3] A Marine medic in the area quickly acted to save Huffhines,

---

[2]In an eyewitness's written statement to police, the eyewitness recounted that Cardona said he was going to get a gun and shoot everybody. This portion of the statement was not admitted into evidence.

[3]It could not be determined exactly how many bullets hit Huffhines, and an investigating officer testified that it was possible that Huffhines's shoulder and jaw wounds were part of "one continuous wound." Huffhines testified that "[t]hey" believed she was hit by "two, maybe three" bullets, but that "[t]hey honestly didn't say." No bullet fragments were recovered from Huffhines's wounds.

2

and she recovered. Six forty-caliber bullet casings were found near where Cardona was standing when he fired the gun six times.

A grand jury indicted Cardona with aggravated assault with a deadly weapon—that he intentionally or knowingly caused bodily injury to Huffhines by shooting her with a firearm, a deadly weapon. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2015), § 22.02(a)(2) (West 2011). The indictment also contained a repeat-offender notice, alleging that Cardona had been convicted of aggravated robbery with a deadly weapon—a knife—in 2004. *See id.* § 12.42(b) (West Supp. 2015). Cardona pleaded not guilty to the indictment.

At trial, Huffhines testified that when a disturbance broke out in front of the bar, the man she was with that night took off his shirt and walked away from her, presumably "to go into the fight." She testified that a man wearing a solid, blue shirt and black pants then walked up, pointed a gun at her, fired multiple times, and hit her in the neck. She also had wounds to her jaw and right shoulder. She did not see anyone else with a gun. Huffhines stated that there was only one shooter that night—the man in the solid, blue shirt—and that the lone shooter was the person who shot her. The jury viewed video from the bar's security cameras that showed a man in a striped, white shirt and white baseball cap get in a fight with another man, go get his car from the back of the bar, pull around to the front of the bar, get out of the car to yell obscenities at a group of people, and shoot a gun six times into the group. A waitress at the bar told investigating officers that the shooter was in a striped shirt and testified at trial that he had

3

been with a group celebrating a birthday the night of the shooting. She identified Cardona as the shooter in a pretrial photographic line-up. Cardona's counsel conceded during opening and closing arguments that Cardona shot and hit Huffhines two times, but urged that his actions amounted only to deadly conduct.

During the charge conference, Cardona requested that the court instruct the jury on the lesser-included offense of felony deadly conduct:

> The evidence was uncontroverted by the victim that someone else shot her. So if she got shot by someone else, then my client may have merely pointed a gun in her direction and discharged it and not hit her. She testified that someone in a blue shirt coming across the street shot her.

The trial court clearly grasped the legal basis of Cardona's request, but denied it:

> But I do fully understand your position is that it's raised that a third individual shot and, therefore, what is shown on the video is your client firing a gun and if your client didn't hit anyone, all he's done is deadly conduct. I do understand your request. That will be denied.

The jury was charged on the offense of aggravated assault with a deadly weapon causing bodily injury, on the justification defense of defense of a third person, and on transferred intent in the context of criminal responsibility.[4] *See* Tex. Penal Code Ann. §§ 2.03, 6.04(b), 9.02, 9.33 (West 2011).

The jury found Cardona guilty of aggravated assault with a deadly weapon. Cardona pleaded true to the repeat-offender notice. Because Cardona did not

---

[4]Regarding transferred intent, the trial court instructed that a person "is criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person was injured."

4

file a pretrial election for the jury to assess his punishment, the trial court found the repeat-offender notice true and sentenced Cardona to forty years' confinement. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (West Supp. 2015). Cardona now appeals and argues that the evidence was insufficient to show that he shot Huffhines and that the trial court erred by failing to include a jury instruction on the lesser-included offense of felony deadly conduct.

## II. SUFFICIENCY OF THE EVIDENCE[5]

In his first point, Cardona argues that because Huffhines described a different shirt than the shirt he was wearing at the time of the offense, there was no DNA evidence linking him to the assault, and no definitive eyewitness testimony identified Cardona as the shooter, the evidence is insufficient to sustain his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*,

---

[5]We must address the sufficiency of the evidence first because any resulting relief would be acquittal, while any relief from the failure to charge the jury on a lesser-included offense would be a remand for new trial. *See Aldrich v. State*, 296 S.W.3d 225, 230 (Tex. App.—Fort Worth 2009, pet. ref'd) (op. on reh'g); *see also Farrakhan v. State*, 263 S.W.3d 124, 130, 144–45 (Tex. App.—Houston [1st Dist.] 2006) (holding evidence sufficient to support conviction of lesser-included offense before determining erroneous submission of lesser-included instruction warranted reversal), *aff'd*, 247 S.W.3d 720 (Tex. Crim. App. 2008).

434 S.W.3d 166, 170 (Tex. Crim. App. 2014). We may not assess the sufficiency of the evidence by focusing on evidence the State did not introduce. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

Cardona is correct that no DNA or fingerprint evidence connects him to the offense. But we may not focus on what evidence is missing. *See Chambers*, 711 S.W.2d at 245. We must focus on the admitted evidence and determine whether the inferences from that evidence are reasonable based upon the evidence's cumulative force when viewed in the light most favorable to the verdict. Therefore, the absence of DNA or fingerprint evidence does not, *ipso*

6

*facto*, result in a conclusion that the evidence was insufficient to support the jury's verdict. Cardona next argues that the evidence is insufficient because no eyewitness definitively identified him as the shooter. This argument strays from the appropriate standard of review. We may not evaluate a witness's credibility as that is the sole province of the fact-finder. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Winfrey*, 393 S.W.3d at 768. Thus, in accordance with this review standard, we look to the cumulative force of the admitted evidence in the deferential light most favorable to the jury's verdict.

The evidence admitted at trial, including the video of the offense, established that a man in a white, striped shirt and a white baseball cap shot into a group of people after getting into a fight while exiting a bar. Cardona was wearing a striped shirt and white baseball cap the night of the shooting, and his wife confirmed that the shooter on the video was Cardona. Indeed, Cardona's attorney did not dispute at trial that Cardona shot a gun that night. The video showed Cardona shooting a gun six times, and six bullet casings were found in the area near where Cardona was standing when he fired the gun. The fact that Huffhines testified that the shooter was wearing a solid shirt does not detract from the video evidence, Huffhines's remaining testimony, or the other eyewitness testimony connecting Cardona to the shooting and Huffhines's injuries. *See Anderson v. State*, 461 S.W.3d 674, 679–80 (Tex. App.— Texarkana 2015, no pet.) (finding evidence sufficient to support aggravated robbery conviction even though no identification of defendant at trial because jury

7

saw video of robbery and could compare video to appellant's appearance at trial); *see also Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) ("[T]he evidence is not rendered insufficient simply because appellant presented a different version of the events."). The cumulative force of the video evidence along with testimony from other witnesses who were present at the bar shows that the jury's verdict was based on the reasonable inference that Cardona was the shooter that caused Huffhines's bodily injuries. Thus, the evidence was sufficient, and we overrule Cardona's first point.

## III.  LESSER-INCLUDED OFFENSE

### A.  ENTITLEMENT TO INSTRUCTION

In his second point, Cardona argues that the trial court erred by refusing his requested charge on the lesser-included offense of felony deadly conduct. *See* Tex. Penal Code Ann. § 22.05(b) (West 2011); *see also* Tex. Code Crim. Proc. Ann. art. 36.15 (West 2006). He asserts that "there was evidence beyond a scintilla that someone other than the defendant fired a shot that struck the victim," which negates the essential, aggravated-assault element of causing bodily injury to Huffhines by firing a gun in her direction. He asserts that "if the jury did believe that [Cardona] fired a weapon[,] there is sufficient evidence in the record from which to conclude that such a discharge, in the direction of [Huffhines], was still not the discharge that struck her."

8

We review the trial court's decision on the submission of a lesser-included offense for an abuse of discretion.[6] *See Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005). In doing so, we first consider whether the lesser-included offense is included within the proof legally necessary to establish the charged offense, and if so, we next examine whether there is evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser-included offense. *See* Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Cavazos v. State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012); *Sweed v. State*, 351 S.W.3d 63, 67–68 (Tex. Crim. App. 2011). In determining the second part of this test, we refer to the evidence in the context of the entire record, but we may not consider whether that evidence is credible, controverted, or in conflict with other evidence. *See Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005); *Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993). There must be some affirmative evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Wortham v.* State, 412 S.W.3d 552, 557–58 (Tex. Crim. App. 2013); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Anything more than a scintilla of nonspeculative evidence may be sufficient to

---

[6]A trial court has no discretion in determining what the law is or applying the law to the facts. *See State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *see also* Larry A. Klein, *The Evolved Appellate Brief*, 37 Litigation 38, 40 (2010) ("There is generally no discretion for a court not to instruct on a theory of the case, such as . . . a lesser included offense.").

entitle a defendant to a lesser charge, and we may not consider whether that evidence is credible, controverted, weak, or in conflict with other evidence. *Wortham*, 412 S.W.3d at 558; *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007); *Moore*, 969 S.W.2d at 8. "[T]he question to be answered is 'whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence' when viewed in the light most favorable to the submission of the lesser offense." *Goad v. State*, 354 S.W.3d 443, 450 (Tex. Crim. App. 2011) (Keller, P.J., concurring) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).

The State concedes that felony deadly conduct was a lesser-included offense of aggravated assault with a deadly weapon as alleged in the indictment. *See Darkins v. State*, 430 S.W.3d 559, 567 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Therefore, we now consider whether a rational jury, in the context of the entire record viewed in a light favorable to submission of the lesser offense, could have found Cardona guilty only of felony deadly conduct. Cardona would be entitled to a deadly-conduct instruction if the record contains more than a scintilla of nonspeculative evidence that, if believed by the jury, negates or refutes an element of aggravated assault as charged in the indictment while providing a rational alternative finding on any associated element of the lesser offense. *See Barrios v. State*, 389 S.W.3d 382, 400 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Cavazos*, 382 S.W.3d at 382–84). The differences between felony deadly conduct and aggravated assault as charged

10

are the bodily injury suffered by Huffhines and causation of that bodily injury. *Compare* Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(1) (aggravated assault with a deadly weapon causing bodily injury), *with id.* § 22.05(b) (felony deadly conduct). *See generally Guzman v. State*, 188 S.W.3d 185, 188–90 (Tex. Crim. App. 2006) (recognizing both misdemeanor deadly conduct and attempted murder do not require evidence of bodily injury but differ on mental state required for purposes of article 37.09). At trial, it was not disputed that Cardona knowingly fired a gun. Further, it was not contradicted that Huffhines suffered bodily injury.

But there was more than a scintilla of evidence that Cardona did not cause Huffhines's bodily injury even though he fired into a group of people containing Huffhines. Huffhines testified that a man wearing a solid, blue shirt pointed a gun at her and fired more than one shot. She saw no other shooter. It was uncontradicted that Cardona was wearing a white shirt with blue stripes the night of the shooting. Huffhines's testimony introduced the alternative possibility that a second shooter, wearing a solid, blue shirt, shot at and hit Huffhines. We cannot weigh or otherwise assay this evidence of a second shooter, which supported the submission of the lesser-included offense by allowing a reasonable fact-finder to disagree that Cardona caused Huffhines's bodily injury. *See Reynolds v. State*, 371 S.W.3d 511, 521–22 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Counsel's statements during opening and closing arguments that Cardona not only shot at but hit Huffhines were not evidence that could have been considered by the jury, which the trial court clearly and repeatedly instructed the jury during

11

opening and closing arguments. *See Hutch v. State*, 922 S.W.2d 166, 173–74 (Tex. Crim. App. 1996). Finally, Cardona's raised and submitted justification defense of defense of a third person did not vitiate his request for a lesser-included instruction on deadly conduct. *Cf. Gamino v. State*, No. 02-14-00356-CR, 2015 WL 7008466, at *6–7 (Tex. App.—Fort Worth Nov. 12, 2015, no pet. h.) (holding defendant's refusal to admit all elements of charged offense did not preclude submission of self-defense instruction); *Hubbard v. State*, 133 S.W.3d 797, 801–02 (Tex. App.—Texarkana 2004, pet. ref'd) (holding defendant not required to admit commission of every statutory element of the offense as charged to be entitled to instruction on a justification defense).

There was more than a scintilla of evidence that Cardona was guilty only of deadly conduct—that he knowingly discharged a gun without an intended victim, but did not cause the victim's bodily injury.[7] Accordingly, an instruction on deadly conduct was required, and the trial court erred by refusing Cardona's specific request for such an instruction. *Cf., e.g., Sweed*, 351 SW.3d at 68–70 (concluding more than a scintilla of evidence raised submission of theft as lesser-included offense of aggravated robbery and failure to so instruct was error).

---

[7]We recognize that the jury was charged that Cardona was criminally responsible for causing Huffhines's bodily injury if he "desired, contemplated, or risked" hitting someone other than Huffhines but hit her instead. Tex. Penal Code Ann. § 6.04(b). However, no witness testified that Cardona's desire was to hit anyone.

12

## B. HARM

Because the trial court erred in its refusal to submit an instruction on deadly conduct and because Cardona specifically raised the issue at trial, we must reverse if some harm resulted from the error—if the error was calculated to injure Cardona's rights or resulted in an unfair trial. *See* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). In other words, "any error that is not harmless will constitute reversible error." *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015).

"If the charge error involves the absence of a lesser-included offense that leaves the jury with the sole option to convict the appellant of the charged offense or to acquit him, some harm exists." *Henry v. State*, 263 S.W.3d 151, 156 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "[T]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1169 (2006). When a jury is faced with the sole option of either convicting the defendant of the greater charged offense or acquitting him, "a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense." *O'Brien v. State*, 89 S.W.3d 753, 756 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Because the trial court denied the jury the opportunity to convict Cardona solely of the

13

lesser-included offense of deadly conduct, which it reasonably could have done based on Huffhines's testimony at trial, its erroneous failure to submit this instruction created some harm to Cardona. *See, e.g.*, *Nangurai v. State*, No. 01-13-00642-CR, 2014 WL 3971374, at \*3–5 (Tex. App.—Houston [1st Dist.] Aug. 14, 2014, pet. ref'd); *Henry v. State*, 263 S.W.3d 151, 156–57 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *cf. Saunders v. State*, 913 S.W.2d 564, 572 (Tex. Crim. App. 1995) (holding because jury convicted defendant of greater offense rather than of submitted lesser-included charge, failure to submit requested but different lesser-included charge harmless). Additionally, felony deadly conduct as requested by Cardona would have been a second-degree felony based on the repeat-offender notice found true by the trial court, carrying a punishment range of "any term of not more than 20 years or less than 2 years," which is less than the 40 years' confinement imposed by the trial court for aggravated assault. Tex. Penal Code Ann. § 12.33(a); *see also id.* § 12.42(a). "Harm exists when the penalty imposed for the charged offense exceeds the potential penalty for the lesser included offense." *Williams v. State*, 314 S.W.3d 45, 53 (Tex. App.—Tyler 2010, pet. ref'd). We sustain Cardona's second point.

## IV. CONCLUSION

The evidence was sufficient to convict Cardona of aggravated assault with a deadly weapon causing bodily injury. But the trial court erred by refusing to submit a jury instruction on the lesser-included offense of deadly conduct based on more than a scintilla of evidence that Cardona was guilty only of felony deadly

14

conduct. This error caused some harm to Cardona. Accordingly, the appropriate remedy is to reverse the trial court's judgment and remand this case for a new trial. *See, e.g.*, *Bridges v. State*, 389 S.W.3d 508, 513 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Curtis v. State*, 89 S.W.3d 163, 179 (Tex. App.—Fort Worth 2002, pet. ref'd).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 17, 2015